# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MARLO THOMAS,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 65916<br><br>**FILED**<br><br>JUL 2 2 2016<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY S. Young<br>DEPUTY CLERK |

## *ORDER OF AFFIRMANCE*

This is an appeal from a district court order denying a postconviction petition for a writ of habeas corpus in a death penalty case. Eighth Judicial District Court, Clark County; Stefany Miley, Judge.[1]

Appellant Marlo Thomas robbed a manager and killed two employees at a restaurant where he formerly worked. A jury convicted him of two counts of first-degree murder with use of a deadly weapon, robbery with use of a deadly weapon, first-degree kidnapping with use of a deadly weapon, conspiracy to commit murder and/or robbery, and burglary while in possession of a firearm. After a penalty hearing, the jury sentenced him to death for each murder. The death sentences were later reversed in a postconviction proceeding, *Thomas v. State*, 120 Nev. 37, 45, 83 P.3d 818, 824 (2004), and a second penalty hearing was held. At the conclusion of the second penalty hearing, Thomas again was sentenced to death for each murder. This court affirmed the sentences. *Thomas v. State*, 122 Nev. 1361, 148 P.3d 727 (2006). Thereafter, Thomas filed a

---

[1]The Honorable Michael Cherry, Justice, voluntarily recused himself from participation in the decision of this matter.

timely postconviction petition for a writ of habeas corpus. The district court denied Thomas' petition without conducting an evidentiary hearing. This appeal followed.

Thomas raises several issues related to his suggestion that he is intellectually disabled. While he initially claimed in the proceedings below that he is intellectually disabled and therefore could not be sentenced to death, *see Atkins v. Virginia*, 536 U.S. 304 (2002), he never requested an evidentiary hearing on the issue and later acknowledged he is not intellectually disabled but is merely close to the line. As a result, the proceedings below focused on a different but related claim: whether counsel were ineffective at the second penalty hearing for failing to present evidence of Thomas' borderline intellectual disability as a mitigating circumstance. Because Thomas abandoned his *Atkins* claim below, we decline to consider his assertion that the district court erred in failing to hold an evidentiary hearing to determine whether he is intellectually disabled. We also decline to consider Thomas' related claim that counsel were ineffective for failing to file a motion pursuant NRS 175.554(5) because it is raised for the first time on appeal. *See Ford v. Warden*, 111 Nev. 872, 901 P.2d 123, 130 (1995) (indicating that petitioner cannot raise new claim on appeal that was not presented to district court in postconviction proceeding); *Davis v. State*, 107 Nev. 600, 606, 817 P.2d 1169, 1173 (1991) (holding that this court need not consider arguments raised on appeal that were not presented to the district court in the first instance), *overruled on other grounds by Means v. State*, 120 Nev. 1001, 103 P.3d 25 (2004).

Thomas also contends that the district court erred by denying his claim that counsel at his second penalty hearing were ineffective for

failing to investigate and present evidence of his borderline intellectual disability as a mitigating circumstance. He argues that the district court should have conducted an evidentiary hearing on this claim.

To prove ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and resulting prejudice such that there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984); *Warden v. Lyons,* 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*). We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden,* 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005). An evidentiary hearing is warranted where the petitioner raises claims that are not belied by the record and, if true, would warrant relief. *Hargrove v. State,* 100 Nev. 498, 502, 686 P.2d 222, 225 (1984).

In support of his claim, Thomas provided the district court with a report of a neuropsychological and psychological evaluation conducted by Dr. Jonathan Mack. Dr. Mack concluded that Thomas suffers from "neurocognitive deficits that impair activities of daily life to a significant extent," including deficits in the areas of comprehension of written and spoken word, "as well as in the interpersonal social realm with extremely disinhibited impulse control and control of emotions." Dr. Mack's report showed that Thomas performed extremely poorly on most tests he performed and one of his scores was "one of the worst" Dr. Mack had ever seen. Dr. Mack concluded that Thomas had an IQ of 72, and although he did not diagnose Thomas as intellectually disabled, he

concluded that Thomas suffered from Fetal Alcohol Spectrum Disorder and several other disorders. Ultimately, Dr. Mack concluded that Thomas' "propensity towards emotional dyscontrol, effective impulsivity, and dsyregulation of aggressive behavior" was "a consequence of an organic brain syndrome, fetal alcohol exposure, and, in essence, the overall consequence of organic brain damage."

We conclude that the district court did not err. Similar evidence to that proffered in this proceeding was presented at the first penalty hearing.[2] We can infer that counsel made a strategic decision to take a different approach at the second penalty hearing because the record shows counsel knew of the testimony and evidence offered at the first penalty hearing. *See Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (explaining that an appellate court is "required not simply to give the attorneys the benefit of the doubt, but to affirmatively entertain the range of possible reasons [the petitioner's] counsel may have had for proceeding as they did" (internal quotation marks, alterations, and citations omitted)). Such a strategic decision was objectively reasonable given that one of the State's main arguments at the second penalty hearing was that, based on his criminal history and behavior while incarcerated, Thomas would always be dangerous.[3] The newly-proffered evidence might have

---

[2]Thomas points to no facts to suggest that his intellectual functioning changed thereafter such that counsel should have conducted a new investigation before the second penalty hearing.

[3]At the second penalty hearing, the State presented extensive records which showed that Thomas had previously committed many serious crimes, as well as testimony from corrections officers about his abhorrent behavior while incarcerated, which included accounts that he
*continued on next page . . .*

explained *why* Thomas acted out but also could have supported the State's argument that he would never be a manageable inmate. *See id.* at 201 (observing that evidence of defendant's family's substance abuse problems, mental illness, and criminal history was "by no means clearly mitigating, as the jury might have concluded that [defendant] was simply beyond rehabilitation"); *see also Lisle v. State*, 131 Nev., Adv. Op. 39, 351 P.3d 725, 733 (2015) (recognizing that "mitigation evidence can be a double-edged sword that may indicate diminished culpability but at the same time may indicate an increased risk of future dangerousness"). Counsel cannot be deemed deficient for declining to introduce testimony that could have been just as harmful as helpful and would have been counterproductive to the picture he was trying to paint: that Thomas' bad behavior was mostly in the past and he was maturing the longer he stayed incarcerated. Counsel also presented testimony from Thomas' family members, who briefly and generally commented on his mental deficits and upbringing. Counsel's decision to generally acknowledge Thomas' problems from his family's perspective was objectively reasonable. *See Wong v. Belmontes*, 558 U.S. 15, 24 (2009) (explaining that expert testimony was unnecessary because the defense "required only that the jury make logical connections of the kind a layperson is well equipped to make. The jury simply did not need expert testimony to understand the

---

. . . *continued*
attacked officers and encouraged fellow inmates to do the same, failed to comply with institution rules, and belittled, harassed, and threatened female corrections officers.

'humanizing' evidence; it could use its common sense or own sense of mercy.").

Furthermore, we conclude that Thomas failed to demonstrate prejudice. As explained above, the newly-proffered evidence was a double-edged sword. In addition, it could have opened the door to unfavorable rebuttal evidence. *See Wong*, 558 U.S. at 26 (holding that counsel was not ineffective where he declined to admit favorable testimony which would have opened the door to "the worst kind of bad evidence"). But notably, the evidence is not so compelling that there is a reasonable probability that the proceedings would have ended differently had it been presented. Thomas committed two brutal murders and expressed displeasure that there was not a third. His criminal record was extensive and included numerous acts of violence, and he continued his violent actions while incarcerated, oftentimes targeting women. The newly-offered evidence is simply not enough to have changed the jury's calculus.

Having concluded that the district court did not err, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Parraguirre

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Saitta

_____, J.
Pickering

Supreme Court
OF
Nevada

(O) 1947A

6

cc: Hon. Stefany Miley, District Judge
Justice Law Center
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A